UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

WANDA M. MILLER,                    )
                                    )    No. CV-08-3076-JPH
            Plaintiff,              )
                                    )
v.                                  )    ORDER GRANTING DEFENDANT'S
                                    )    MOTION FOR SUMMARY
MICHAEL J. ASTRUE,                  )    JUDGMENT AND DENYING
Commissioner of Social Security,    )    PLAINTIFF'S MOTION FOR
                                    )    SUMMARY JUDGMENT
            Defendant.              )
                                    )
                                    )
_____)

        BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 19, 25.)  Attorney

D. James Tree represents plaintiff; Special Assistant United States Attorney David R. Johnson represents

defendant.   The parties have consented to proceed before a magistrate judge.  (Ct. Rec. 7.)  After

reviewing the administrative record and briefs filed by the parties, the court **DENIES** plaintiff's Motion

for Summary Judgment and **GRANTS** defendant's Motion for Summary Judgment.

                              **JURISDICTION**

        Plaintiff Wanda M. Miller (plaintiff) protectively filed for social security income (SSI) and

disability insurance benefits (DIB) on March 11, 1998.  (Tr. 83, 718.)  Plaintiff alleged an onset date of

November 5, 1996. (Tr. 83, 718.)  Benefits were denied initially and on reconsideration.  (Tr. 74, 78.)

Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Joel

Elliott on January 28, 2000.    (Tr. 15-23.)  Plaintiff was represented by counsel and testified at the

hearing.  (Tr. 38-62, 67-68.)  Vocational expert Sheri Bonner also testified.  (Tr. 62-66.)    The ALJ

denied benefits (Tr. 15) and the Appeals Council denied review.  (Tr. 4.)  Plaintiff filed a claim in federal

district court and, based on a stipulation by the parties, the district court judge remanded for the matter for further proceedings.  (Tr. 301-02.)  On remand, the ALJ was ordered to (1) update the record with progress notes and a medical source statement from treating physician Elsie Tupper, M.D.; (2) develop the record concerning Plaintiff's mental impairments, notably panic attacks and agoraphobia; and (3) if necessary, obtain medical and vocational expert testimony to complete the record and render a new decision.  (Tr. 301.)

Pursuant to the district court order, a second hearing was held before ALJ Ralph Jones on May 23, 2005.  (Tr. 625-53.)  Plaintiff and vocational expert Paul Morrison testified.  (Tr. 628-53.)  On June 6, 2004, the ALJ issued a partially favorable decision, finding plaintiff disabled as of January 1, 2003, but capable of returning to past relevant work from the alleged date of onset until December 31, 2002. (Tr. 285-94.)  The Appeals Council denied review  and plaintiff again sought review before the federal district court.  (Tr. 659.)  By order of United States Magistrate Judge Michael W. Leavitt dated January 16, 2007, the matter was again remanded for additional proceedings.  (Tr. 717-32.)  On remand, the district court directed the ALJ to (1) call a medical expert to determine a proper disability onset date; (2) reconsider all medical source opinions; (3) utilize the medical expert to help reassess Plaintiff's RFC; and (4) reassess Plaintiff's RFC prior to January 1, 2003.  (Tr. 732.)

A third hearing was held before ALJ Richard A. Say on July 14, 2008.  (Tr. 993-1021.) Vocational expert Gary Jeski and medical experts Frank McBarron, M.D., and John Bonner Nance, Psy.D., testified.  (Tr. 998-1021.)  On August 28, 2008, the ALJ issued a second partially favorable decision, again finding that plaintiff was not disabled before January 1, 2003, but became disabled on that date and continued to be disabled through the date of the decision.  The matter is now before this court for a third time pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ decisions, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

At the time of the second hearing on May 23, 2005, plaintiff was 50 years old.  (Tr. 628.)  She dropped out of school in the eleventh grade but later got a GED.  (Tr. 628-29.)  She has an associate's degree in applied science in vision care technology and additional schooling toward a second associate's

degree. (Tr. 628.)  She last worked in December 1996 at a fast food establishment.  She said she left the job after one day because she hurt her back and shoulders mopping the floor. (Tr. 39-40.)  She previously worked as a bookkeeper and dispensing glasses for an optometrist, and also has past work experience as a waitress and meat wrapper. (Tr. 41.)  She testified that she cannot return to previous work because she is in too much physical pain.  (Tr. 42.)  She alleges fibromyalgia, lumbar strain, memory and concentration difficulties, chronic fatigue and agoraphobia among other mental impairments. (Tr. 627-28.)  She said she is tired all the time and has panic attacks when she is around people. (Tr. 42.)  The worst pain is in her shoulder, back, knees, ankles and wrists. (Tr. 42.)  She testified that she has pain all the time and that pain keeps her awake at night. (Tr. 43.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965).  On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -3

(9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -4

claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since November 5, 1996, the alleged onset date. (Tr. 661.) At step two, he found Plaintiff had severe impairments related to chronic cervical and lumbar strain with mild degenerative disc disease in the lumbar spine, fibromyalgia, headaches, social phobia, panic disorder with agoraphobia, recurrent major depressive disorder of mild to moderate severity, and a dysthymic disorder. These severe impairments existed before January 1, 2003. (Tr. 662.) At step three, the ALJ found that before January 1, 2003, plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 664.) The ALJ then determined that before January 1, 2003:

> [T]he claimant retained the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). She had

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -5

the ability to read, write and use numbers. She was limited to superficial interaction with co-workers for work-related purposes. She needed to avoid interacting with members of the general public. She was limited to performing simple one-two step instructions.

(Tr. 665.) At step four, the ALJ found plaintiff was capable of performing past relevant work as a meat wrapper before January 1, 2003. (Tr. 667.) The ALJ then found that beginning on January 1, 2003, plaintiff's severe impairments, in combination, rendered her unable to sustain the persistence and pace of full-time employment. (Tr. 667.) Thus, plaintiff was not disabled prior to January 1, 2003, but became disabled on that date and continued to be disabled through the date of the decision. However, plaintiff was not under a disability within the meaning of the Social Security Act at any time through September 30, 1997, the date last insured.

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred by denying plaintiff's claim based on the vocational expert's response to an incomplete hypothetical. (Ct. Rec. 20 at 22-27.) Defendant argues the ALJ's vocational hypothetical was valid, made a proper credibility determination, and properly evaluated the medical evidence. (Ct. Rec. 26 at 6-23.)

## DISCUSSION

**1.    Opinion Evidence**

Plaintiff argues the ALJ's hypothetical to the vocational expert was incomplete because the RFC finding was based on improper consideration of the medical and psychological opinion evidence. Plaintiff points to notes and opinions by Dr. Tupper, Dr. Thompson, Dr. Ferber, Dr. Teal and plaintiff's mental health counselor and asserts the ALJ did not give adequate reasons for rejecting these assessments. Plaintiff also argues the ALJ improperly considered the opinions of the state agency consulting psychologists and the medical experts.

In evaluating medical or psychological evidence, a treating or examining physician's opinion is entitled to more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -6

"specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990). However, the opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1043; *Lester*, 81 F.3d at 830-31. Cases have upheld the rejection of an examining or treating physician based on part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

### a. Dr. Tupper

Dr. Tupper has been Plaintiff's treating physician for 25 years. (Tr. 629.) In addition to office visit notes commencing in 1996, the record includes a medical report form completed by Dr. Tupper dated August 2, 2000. (Tr. 244-47.) Dr. Tupper lists diagnoses of depression, gastroesophogeal reflux disorder; carpal tunnel syndrome, fibromyalgia, cervical and L-6 strain, irritable bowel

syndrome (systemic colitis) with diarrhea and strain of right shoulder and neck (Tr. 244.)  Dr. Tupper assessed a number of limitations and restrictions and opined that plaintiff is not employable.  (Tr. 244-47.)  Dr. Tupper's opinion is contradicted by the medical expert, Dr. McBarron, who testified that plaintiff was not physically disabled until injuring her leg in January 2003.  (Tr. 1000.) Therefore, proper rejection of Dr. Tupper's opinion requires specific, legitimate reasons supported by substantial evidence.

The ALJ gave little weight to Dr. Tupper's reports and opinion that plaintiff is disabled.  (Tr. 666.)  The ALJ provided several reasons for rejecting Dr. Tupper's opinion.  First, the ALJ pointed out that Dr. Tupper's opinion about the onset of disability has been inconsistent.  (Tr. 666.)  A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported.  *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*, 278 F.3d at 957.  In the August 2000 report, Dr. Tupper indicated plaintiff's disabling limitations have existed "since at least September 1995." (Tr. 247.)  In office visit notes from September 2003 to August 2004, Dr. Tupper repeatedly noted Plaintiff, "Became disabled and unable to work in September of 1995."  (Tr. 526, 528-29, 536-37, 573.)  In a June 2004 medical report form, Dr. Tupper opined that plaintiff's prognosis was "permanent disability" and indicated that the assessed limitations had existed since a leg injury in January 2003.[1]  In a July 2004 letter, Dr. Tupper stated plaintiff had been unable to work due to fibromyalgia and agoraphobia for seven years, or since 1997.  (Tr. 572.)  A February 2008 medical report form indicates that a number of disabling limitations existed "prior to 1995." (Tr 977.)

Plaintiff lumps the different dates mentioned by Dr. Tupper regarding the onset of disability into the suggestion that plaintiff has been disabled "since at least the mid-1990's." (Ct. Rec. 29 at 12.)  However, Dr. Tupper's records offer at least four different onset dates: before 1995, September 1995, 1997, and January 2003.  Dr. Tupper's inconsistent statements about the onset of plaintiff's

---

[1]It is noted that Dr. Tupper's June 2004 medical report is focused on plaintiff's January 2003 leg injury rather than all of her conditions.  When asked to give the first and last dates of treatment, Dr. Tupper responded, "1-15-2003 for recent injury." (Tr. 570.)  In the comments section, Dr. Tupper noted, "Fibromyalgia causing the fall has been present at least 7 years when diagnosed."

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -8

disability undermine the reliability of her opinion.  The ALJ properly considered the inconsistencies in rejecting Dr. Tupper's opinions.

The second reason given by the ALJ for rejecting Dr. Tupper's opinion is that Dr. Tupper's assessments are not supported by objective evidence.  (Tr. 666.)  The ALJ pointed out that before January 2003, plaintiff's treatment regimen was relatively conservative.  (Tr. 666.)  Although plaintiff visited the emergency room complaining of headaches a number of times between the alleged onset date and January 2003, she was not hospitalized.[2]  (Tr. 177, 173, 165, 379, 364.)  Plaintiff was treated with medication for pain and depression and she responded well to conservative treatment.  (Tr. 666.)  Plaintiff did not participate in significant mental health counseling before 2003.  (Tr. 131, 219-21, 226, 336-40, 346-57.)  Radiological imaging showed only mild changes in her spine and shoulder.  (Tr. 167, 190, 206, 357, 370.)  Plaintiff at times discontinued her medication.  (Tr. 221, 230, 460.)  Additionally, the ALJ pointed out that plaintiff's activities of daily living were "relatively normal," including working with horses (Tr. 204, 337, 338, 346-47), household chores (Tr. 131-32, 138), searching for employment (Tr. 177), and engaging in hobbies like crafts and painting.[3]  (Tr. 131.)  These factors all support the ALJ's conclusion that Dr. Tupper's findings are not supported by objective evidence.

A third reason mentioned by the ALJ in rejecting Dr. Tupper's August 2000 and February 2008 conclusions that plaintiff was limited to less than sedentary work since September 1995 is that

[2]Plaintiff also made an emergency room in May 2002 complaining about pain from a tooth extraction.  (Tr. 359.)  She was evaluated and advised to continue with her prescribed medications.  (Tr. 360.)

[3]Plaintiff argues that the ALJ improperly considered plaintiff's daily activities in rejecting Dr. Tupper's and other medical opinions.  (Ct. Rec. 29 at 5-7, 10-11.)  Assuming for the sake of argument that the ALJ improperly considered plaintiff's daily activities in rejecting the medical opinions, additional evidence cited by the ALJ supports his conclusions.  The error, if any, in citing plaintiff's daily activities is harmless as it would not change the ultimate outcome.  *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -9

the  finding is not consistent with the record.  (Tr. 667.)  The ALJ also asserted that Dr. Tupper's opinion appears to be based upon plaintiff's subjective complaints, not objective evidence, and that Dr. Tupper had undertaken the role of advocate for plaintiff.  (Tr. 667.) A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001);  *Fair*, 885 F.2d at 604.  Furthermore, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes.  *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's rejection of physician's opinion as unsupported by physician's treatment notes).  The ALJ pointed out that the medical experts testified that Dr. Tupper's opinions are not supported by objective evidence and are not consistent with the treatment record before January 2003.  (Tr. 665.)   One of the medical experts, Dr. McBarron, a physician, testified that plaintiff did not have any physical limitations which would have prevented work prior to January 2003.  (Tr. 1000.)  Dr. Nance, the psychological medical expert, testified that there is not much of a psychological record before June of 1998.  (Tr. 1007.)   This evidence, along with other objective evidence inconsistent with disability discussed *supra*, suggests Dr. Tupper's opinion is not based on objective evidence, but on plaintiff's subjective complaints. Because the ALJ found the severity of plaintiff's complaints not credible,[4] an opinion based primarily on her complaints is not well-supported.  Thus, the ALJ's determination that Dr. Tupper's opinion that plaintiff was disabled before September 1995 is not supported by the evidence is a specific, legitimate reason for rejecting the opinion.

The ALJ provided a number of specific, legitimate reasons supported by substantial evidence justifying rejection of Dr. Tupper's reports.  Therefore, the ALJ properly considered the evidence from Dr. Tupper and did not err.

**b. Dr. Thompson**

Plaintiff argues the ALJ failed to provide adequate reasons for rejecting the assessment of Dr. Thompson, an examining physician.  (Ct. Rec. 20 at 24.)  Dr. Thompson prepared a physical assessment report in July 1998.  (Tr. 135-40.)  He diagnosed possible fibromyalgia, amputation tip of

---

[4]The ALJ's credibility determination is discussed *infra*.

left index finger, chronic lumbosacral strain, and probably chronic depression. (Tr. 140.) Dr.

Thompson described some physical limitations and stated, "The patient would probably be able to

work a full schedule with a work strengthening program. At the present time the patient's work load

would probably be limited to a third to half of a work day." (Tr. 140.) The ALJ gave little weight to

Dr. Thompson's opinion. (Tr. 662.) Dr. Thompson's opinion was contradicted by the state

consulting physician who found no physical limitations and suggested that Dr. Thompson's opinion

was unsupported by the record. (Tr. 157-62.) As a result, the ALJ was required to provide specific,

legitimate reasons for rejecting Dr. Thompson's opinion.

        The ALJ gave several reasons for rejecting Dr. Thompson's opinion. First, the ALJ rejected

Dr. Thompson's opinion because his examination revealed generally normal results in all functional

categories. (Tr. 662.) Second, his findings seems to be based primarily on plaintiff's subjective

complaints rather than objective evidence. (Tr. 662.) As noted above, these are specific, legitimate

reasons to reject a physician's opinion. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957;

*Tonapetyan*, 242 F.3d at 1149; *Fair*, 885 F.2d at 605. The inconsistency between Dr. Thompson's

exam results and his conclusions was also observed by the state consulting physician. (Tr. 162.) Dr.

Thompson's physical and  general neurologic exams revealed no abnormalities. (Tr. 139.) The

motor exam was normal except for the check of fibromyalgia trigger points because plaintiff said all

areas of her body hurt, not just the trigger points. (Tr. 139.) Dr. Thompson found full range of

motion in hands and neck. (Tr. 139.) No abnormalities of spine or neck were noted. (Tr. 139.)

Ultimately, Dr. Thompson found plaintiff should be able to sit without difficulty and stand and move

about without much difficulty. (Tr. 140.) He found lifting and carrying would be limited, but plaintiff

would have no trouble handling objects and no difficulty hearing, speaking or traveling. (Tr. 140.)

Dr. Thompson also noted that plaintiff said she would have difficulty completing a normal workweek.

(Tr. 137.) It was reasonable for the ALJ to conclude Dr. Thompson's opinion that plaintiff would be

able to work no more than one third or one half of a work day is not consistent with his findings on

physical examination, and that his conclusion is more in keeping with plaintiff's complaints. The

inconsistencies between Dr. Thompson's findings and his conclusions, as well as the fact the Dr.

Thompson's conclusion seems based more on plaintiff's subjective complaints than his findings are

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -11

both specific, legitimate reasons for rejecting his report.

Other reasons given by the ALJ in rejecting Dr. Thompson's report is that his findings do not appear to be consistent with plaintiff's conservative treatment history and activities of daily living. (Tr. 662.) As outlined above, plaintiff was not hospitalized for any condition, was treated conservatively with medications (some of which she discontinued at times), and objective radiological imaging revealed only minor changes not generating further treatment or referrals. The ALJ properly considered this evidence in reviewing Dr. Thompson's report.

The ALJ gave a number of specific, legitimate reasons for rejecting Dr. Thompson's report. The reasons are supported by substantial evidence in the record. Thus, the ALJ did not err in assigning little weight to his conclusions.

**c. Dr. Teal**

Plaintiff argues the ALJ did not give adequate reasons for rejecting significant mental limitations noted by Dr. Teal, an examining psychologist. (Ct. Rec. 20 at 24.) In a psychological assessment dated May 26, 1998, Dr. Teal diagnosed major depressive disorder (recurrent, moderate) and dysthymic disorder (late onset) and assessed a GAF of 55.[5] (Tr. 128-34.) He concluded, "Although the depression would make employment difficult at this time, the depressive symptoms appear to be related to the chronic pain and functional limitations with lack of productive time and would probably be improved if she were capable of doing work physically and if the chronic pain were not present." (Tr. 134.) The ALJ gave limited weight to Dr. Teal's findings. (Tr. 666.) The ALJ gave two reasons for assigning little weight to Dr. Teal's conclusions. (Tr. 663.) First, the ALJ noted that Dr. Teal's opinion regarding plaintiff's functional limitations is vague. (Tr. 663.) An ALJ may discredit physician opinions that are brief, conclusory or unsupported by the record as a whole. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). The ALJ has the responsibility of assessing ambiguities in the

---

[5]A GAF score of 51-60 indicates serious symptoms or any serious impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4TH Ed. at 32.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -12

medical evidence. *Magallenes v. Bowen*, 881 F.2d 747, 750 (1989).  Dr. Teal did not define "difficult" or explain how or to what extent employment would be "difficult at this time."  (Tr. 663.) Other comments by Dr. Teal suggest moderate limitations consistent with the ALJ's findings, such as "some deficits in memory and concentration" and GAF scores of 55 to 60.  (Tr. 134.)  The ALJ correctly determined that "difficulty" working does not readily translate into functional limitations. The ALJ therefore reasonably resolved the ambiguity in Dr. Teal's report by assigning limited weight to its conclusions.

The ALJ also cited plaintiff's activities of daily living as inconsistent with Dr. Teal's conclusion that employment would be "difficult." (Tr. 663.)  If the ALJ concluded Dr. Teal's report is vague, it was inconsistent for the ALJ to then conclude that certain activities conflict with Dr. Teal's vague findings.  Thus, the court agrees with plaintiff that her activities of daily living are not necessarily inconsistent with Dr. Teal's opinion, although they may be.   Even if the ALJ improperly considered plaintiff's activities of daily living in this instance, the error  is harmless.  *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005); *Curry*, 925 F.2d at 1131.  The ambiguity of Dr. Teal's conclusion means that it would not add to or change the RFC finding, even if it were credited.  Thus, the ALJ's consideration of Dr. Teal's report was proper.

**d. Dr. Ferber**

Plaintiff also alleges the ALJ's hypothetical to the vocational expert is missing significant mental limitations such as those noted by Dr. Ferber.  (Ct. Rec. 20 at 24.)   Dr. Ferber prepared a psychiatric assessment on August 24, 1999.  (Tr. 221-21.)  Dr. Ferber diagnosed major depressive disorder (recurrent, moderate), panic disorder with agoraphobia, social phobia, and dysthymic disorder (early onset).  (Tr. 223.)  He assessed a GAF score of 55.  (Tr. 223.)  Dr. Ferber's opinion did not include an assessment of limitations or employability.  The ALJ acknowledged Dr. Ferber's assessment, but did not specifically assign weight to the report or accept or reject the opinion.  (Tr. 663.)

Plaintiff's argument is not clear, but she seems to suggest that an additional limitation of being unable to leave her home should have been included based on Dr. Ferber's diagnosis of panic disorder

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -13

with agoraphobia. (Ct. Rec. 29 at 12-13.)  Plaintiff cites a definition of agoraphobia from the Mayo

Clinic website as the basis for such a limitation (Ct. Rec. 29 at 13), despite the fact neither Dr.

Ferber's report nor any other psychological evidence in the record, other than plaintiff's properly

discredited testimony, supports such an extreme limitation.  Dr. Ferber explained his diagnosis of

social phobia and panic disorder with agoraphobia by stating, "[S]he has a long history of anxiety that

increases when she is being scrutinized by others.  Recently she has also had difficulty with panic

attacks." (Tr. 222.)   The psychological expert, Dr. Nance, noted Dr. Ferber's diagnosis and findings

and stated, "[T]he evidence would not be that she was disabled because of those conditions at that

point." (Tr. 1008.)  The ALJ's limitations of superficial interaction with coworkers and no interaction

with the general public are consistent with the evidence and adequately take into account Dr. Ferber's

diagnosis and description of plaintiff's agoraphobia.

   **e. Ms. Palmer**

   Plaintiff alleges the ALJ's hypothetical to the vocational expert omits significant mental

limitations noted by Ms. Palmer, a caseworker[6] at Central Washington Comprehensive Mental Health

(CWCMH).  (Ct. Rec. 20 at 24-25.)   Ms. Palmer met with plaintiff on at least two occasions and

prepared a discharge summary dated May 17, 2002.  She noted diagnoses of major depression

(recurrent, moderate) and dysthymic disorder.  (Tr. 340, 346, 347.)  Ms. Palmer reported:

> The last time that Wanda was seen she appeared to be doing well and
> trying to complete all her paperwork for the SSI lawyer. Ct [client] was
> doing well and stopped coming in per her report . . . She has been
> taking her daughter to the horse shows which is keeping her busy and
> out in the community.  Ct feels that since the stressors with her
> daughters and ex-husband are no longer present she has been able to
> cope much better. . . . Her health continues to be the same with the
> fibromyalgia and headaches but they improved when the weather
> becomes warmer.  She is not taking any medication at this time due to
> all the side effects that she gets with them.

_____

[6]It is not clear whether Ms. Palmer is a therapist or mental health counselor as referenced by

plaintiff. (Ct. Rec. 20 at 18, 24.)  Ms. Palmer signed notes and reports as "CM," meaning case manager

(Tr. 347.).  However, Ms. Palmer apparently met with plaintiff in counseling sessions, as the record

contains progress notes written and signed by her which suggest a counseling relationship.  Regardless

of her exact title, Ms. Palmer is an "other source" whose opinion must be considered as discussed herein.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -14

1    (Tr. 347.)   The ALJ discussed the CWCMH records and referenced Ms. Palmer's discharge

2    summary, but did not specifically accept or reject the reports.  (Tr. 664.)

3         Ms. Palmer is an "other source" whose opinion must be considered.  In addition to evidence

4    from acceptable medical sources, the ALJ may also use evidence from "other sources" including

5    nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-

6    medical sources.  20 C.F.R. §§ 404.1513(d), 416.913(d).   Social Security Ruling 06-3p summarizes

7    regulations providing that only an acceptable medical source can: (1) establish the existence of a

8    medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating

9    source.  Evidence from other sources can be used to determine the severity of an impairment and how

10   it affects the ability to work.  S.S.R. 06-3p; 20 C.F.R. §§ 404.1513(d), 416.913(d).  "Information from

11   other sources cannot establish the existence of a medically determinable impairment. . . . However,

12   information from 'other sources' may be based on special knowledge of the individual and may

13   provide insight into the severity of the impairment(s) and how it affects the individual's ability to

14   function."  S.S.R. 06-3p.

15        In evaluating the evidence, the ALJ should give more weight to the opinion of an acceptable

16   medical source than that of an "other source."  20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74

17   F.3d 967, 970-71 (9th Cir. 1996).  However, the ALJ is required to "consider observations by non-

18   medical sources as to how an impairment affects a claimant's ability to work."  *Sprague v. Bowen*,

19   812 F.2d 1226, 1232 (9th Cir. 1987).  Pursuant to *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993), an

20   ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

21        Plaintiff argues the ALJ did not provide adequate reasons for rejecting Ms. Palmer's

22   assessment, but the ALJ did not reject Ms. Palmer's opinion.  The ALJ considered the CWCMH

23   evidence and took it into account in identifying plaintiff's severe impairments.  (Tr. 664.)  Plaintiff

24   notes Ms. Palmer assessed a  Global Assessment of Functioning Score of 50 on admission to 60 on

25   discharge, indicating serious to moderate impairment.  (Ct. Rec. 20 at 18.)  However, as plaintiff

26   points out, the Commissioner has explicitly disavowed use of GAF scores as indicators of disability.

27   (Ct. Rec. 26 at 21.)   "The GAF scale . . . does not have a direct correlation to the severity

28   requirements in our mental disorder listing."  65 Fed. Reg. 50746-01, 50765 (August 21, 2000).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -15

Furthermore, Ms. Palmer's discharge report actually supports the ALJ's finding that plaintiff's mental impairments were not disabling before 2003.  Thus, the ALJ did not err in considering the evidence from Ms. Palmer's records.

**f.  Dr. Gardner**

Plaintiff argues the ALJ ignored the opinion of the state reviewing psychologist and failed to include limitations found in his report in the hypothetical to the vocational expert.  (Ct. Rec. 20 at 25-26.)  In July 1998, Dr. Gardner, the state reviewing psychologist, completed a Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique form.[7]  (Tr. 141-55.)  Dr. Gardner found plaintiff has an affective disorder and identified moderate limitations in the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and in the ability to interact appropriately with the public.  (Tr. 141-42.)  The ALJ determined Dr. Gardner's findings are generally consistent with the record and gave them "a fair amount of weight."  (Tr. 663.)

Plaintiff argues the ALJ erred by failing to include Dr. Gardner's finding on the Psychiatric Review Technique form ("PRTF") that plaintiff "often" has deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner.  (Ct. Rec. 29 at 14, Tr. 154.)  As defendant points out, however, the PRTF is a tool to be used at steps two and three of the sequential evaluation process, not as the basis for a residual functional capacity determination.  (Ct. Rec. 26 at 17-18.)  "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF."  S.S.R. 96-8p.  Plaintiff argues the directions given to adjudicators under S.S.R. 96-8p amount to "semantics," but her argument would render the findings on the Mental Residual Functional Capacity Assessment (MRFCA) meaningless.  Furthermore, even if it were appropriate for the ALJ to consider the language of the PRTF  in creating a hypothetical,

---

[7]Dr. Beatty reviewed and affirmed Dr. Gardner's findings in January 1999.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -16

substantial evidence supports the limitations he identified.  An ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Dr. Gardner found moderate limitations in attention, concentration and pace, as did the psychological expert, Dr. Nance.  (Tr. 141-42, 1008-1009.)   These limitations were included in the hypothetical to the vocational expert.  (Tr. 1019.)  Thus, the ALJ did not err in considering Dr. Gardner's opinion by failing to include the term "often" in the hypothetical to the vocational expert.

**2.      Credibility**

Plaintiff argues the ALJ's hypothetical improperly omitted many of the limitations found in plaintiff's own testimony and that the ALJ did not provide valid reasons for rejecting plaintiff's testimony.  (Ct. Rec. 29 at 8-10.)  In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908.  The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms.  20 C.F.R. § 4416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)   If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346.  The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair*, 885 F.2d at 601.  The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition.  *Thomas*, 278 F.3d at 958.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -17

 If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 599, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

 In this case, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible before January 2003 to the extent they are inconsistent with the residual functional capacity determination. (Tr. 666.) More specifically, the ALJ noted plaintiff alleges the following difficulties before January 1, 2003: pain in her back, right shoulder and neck; difficulties lifting and carrying weight, walking, standing and sitting; limited mobility; fatigue and depression; difficulties concentrating and completing tasks; anxiety and panic attacks. (Tr. 665.) The ALJ gave several reasons in making the negative credibility finding. (Tr. 666.)

 The first reason given by the ALJ to justify the negative credibility finding is that plaintiff's work history is poor, indicating that she has never consistently applied herself to earning a living or supporting herself. (Tr. 666.) A plaintiff's work history is a permissible consideration in assessing credibility. *Thomas*, 278 F.3d at 958-59. Plaintiff's earnings record reflects that plaintiff earned less than $6,000 every year from 1972 to 1996. (Tr. 315.) In all but five years during that period, plaintiff earned less than $2,000, and had zero earnings in a number of years. It was reasonable for the ALJ to conclude plaintiff's low earnings and spotty work record reflect negatively on her efforts to be a productive worker, and thus reflect negatively on her credibility.

 Second, the ALJ pointed out plaintiff's functional limitations were not as significant as alleged based on her activities of daily living. (Tr. 666.) Although it is well-established that a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -18

claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987), activities of daily living are a relevant consideration in making a credibility determination. *Burch*, 400 F.3d at 681.   Plaintiff reported being functionally independent with regard to personal hygiene and financial affairs.  (Tr. The ALJ also cited activities including searching for employment (Tr. 177), driving an  automobile and performing household errands (Tr. , doing  household chores (Tr. 131-32, 138), caring for pets (Tr. and engaging in hobbies like crafts, painting, cooking and working with horses (Tr. 204, 337, 338, 346-47.)  The court disagrees with plaintiff that plaintiff's daily activities are the "primary" reason given by the ALJ in rejecting plaintiff's testimony. (Ct. Rec. 29 at 8.)  Plaintiff's activities of daily living are just one of a number of reasons which suggested to the ALJ a level of functioning greater than alleged in her application for benefits and her testimony.  (Tr. 666.)  Although the evidence related to plaintiff's activities of daily living as evidence might also support an interpretation more favorable to plaintiff, the ALJ's interpretation was rational.  *See id* at 680-81.  The ALJ's interpretation must be upheld when the evidence is susceptible to more than one rational interpretation.  *Id.*; *Magallenes*, 881 F.2d at 750.

Third, the ALJ pointed out that although plaintiff asserts numerous subjective complaints, the record reveals only conservative and routine treatment before January 1, 2003.  Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony.  20 C.F.R. §§ 416.929(c)(3)(iv) and 416.929.(c)(3)(v).  The ALJ is permitted to consider the claimant's lack of treatment in making a credibility determination.  *Burch*, 400 F.3d at 681.  Furthermore, while a claimant's pain testimony may not be rejected solely because it is unsupported by objective medical findings, *Fair*, 885 F.2d at 601, objective medical evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques is a useful indicator in making reasonable conclusions about the intensity and persistence of symptoms.  20 C.F.R. § 416.929(c)(2).  The ALJ cited a lack of hospitalization, surgery, or aggressive treatment as evidence of a routine course of treatment.  (Tr. 666.)  The ALJ pointed out that radiological imaging shows only mild degenerative changes.  (Tr. 167, 190, 206, 357, 370, 666.)  The ALJ concluded, "This level of treatment suggests the claimants impairments did not result in significant functional limitation, which

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -19

prevented her from engaging in basic work activity." (Tr. 666.)  This a reasonable conclusion based on evidence relevant to a credibility determination.

The ALJ also mentioned that plaintiff did not have significant mental health treatment before 2003.  Plaintiff argues this is not a valid basis for rejecting her mental health complaints.  (Ct. Rec. 29 at 8.)  As plaintiff points out, the Ninth Circuit has observed  that depression "is one of the most under-reported illnesses in the country because those afflicted often do no recognize that their condition reflects a potentially serious mental illness.  Thus, the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [an examining psychologist's] assessment of claimant's condition is inaccurate." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  The court agrees that it was not appropriate for the ALJ to consider plaintiff's limited mental health treatment as evidence of a lack of a credibility since the failure to follow through with mental health treatment may be a symptom of significant mental health problems.

As further evidence, the ALJ cited notes that plaintiff discontinued her medication and reports of medical noncompliance.  (Tr. 221, 230, 347, 460, 666.)   As pointed out by the defendant, S.S.R. 96-7p provides that an individual's statements may be less credible if "the individual is not following the treatment as prescribed and there are no good reasons for this failure."  Adverse side effects are good reason for failure to follow recommended treatment and should not be held against a claimant. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).  In this case, plaintiff consistently reported side effects or a fear of side effects as the reason for discontinuing or declining psychotropic medications.  (Tr. 221, 230, 347, 460.)  The ALJ erred by considering plaintiff's discontinuance of medication in making the credibility determination.

Although the ALJ cited two improper reasons, he provided other valid reasons supported by the record which constitute clear and convincing evidence justifying his credibility finding.  An error in the credibility analysis is harmless error when substantial evidence supports the ALJ's ultimate conclusion that plaintiff's testimony was not credible. *Carmickle*, 533 F.3d at 1162-63; *Batson*, 359 F.3d at 1197; *Curry*, 925 F.2d at 1131; *Booz*, 734 F.2d at 1380.  In this case, the ALJ cited several valid reasons supported by substantial evidence in the record for determining that plaintiff is not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -20

credible as to the disabling effects of her conditions before January 1, 2003.  As a result, the erroneous reasons offered by the ALJ constitute harmless error and the ALJ's credibility determination is supported by clear and convincing evidence.

**3.    Onset Date and Hypothetical**

The ALJ was directed by the District Court to consider the testimony of a medical expert and determine the proper onset date.  (Tr. 732.) The ALJ obtained the testimony of two medical experts, Dr. McBarron, a physician, and Dr. Nance, a psychologist.  (Tr. 998-1014.)

Dr. McBarron testified that "there's absolutely no doubt in my mind" that from the date of plaintiff's knee fracture on January 8, 2003, plaintiff met the listing of 1.02A according to 1002.B2. (Tr. 999.)  The ALJ then asked, "I'm just trying to pin down – it, it sounds to me as if your opinion is to say that she didn't have any physical limitations that would have prevented work prior to January of 2003?"  Dr. McBarron responded, "That's correct."  (Tr. 1000.)  Thus, the testimony of the medical expert established plaintiff's physical disability as of January 2003.

Dr. Nance testified that there was little compelling psychological evidence before June of 1998.  (Tr. 1007, 1009.)  When asked to rate plaintiff's condition from June 1998 to January 2003, Dr. Nance noted the diagnoses of Dr. Teal and Dr. Ferber of dysthymia and anxiety disorder and responded "the evidence would not be that she was disabled because of those conditions at that point."  (Tr. 1008.)  When asked about Dr. Ferber's diagnoses of major depressive disorder, agoraphobia, social phobia and dysthymia or dysthymic disorder early onset, Dr. Nance responded, "I didn't see any of those as being disabling in and of themselves."  (Tr. 1008.)  Upon further inquiry, Dr. Nance identified limitations from June 1998 which included mild restrictions of activities of daily living, moderate limitations in social functioning, moderate limitations in concentration, persistence and pace and no episodes of decompensation.  Dr. Nance also agreed that the record establishes that plaintiff's mental conditions became more severe after she broke her leg in January 2003.  (Tr. 1009.) Thus, the earliest potential disability date based on mental limitations established by the medical expert testimony is June 1998.

The question, then, is whether the limitations identified by Dr. Nance were disabling as of June 1998.  The ALJ posed a hypothetical to the vocational expert taking into account the limitations

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -21

identified by Dr. Nance. (Tr. 1018-19.) The ALJ's hypothetical took into account plaintiff's age, education and work experience, then included:

> Say, exertionally she's capable of medium exertion level work, had some description of dysthymia or major depressive disorder (INAUDIBLE) limitations associated with that. Dr. Nance indicated there is some social issues in 1998, not 1996. So we'll say she could have only superficial interaction with coworkers for work-related purposes, should avoid interaction with the general public, (INAUDIBLE) some limitation of concentration, persistence and pace. So I'll say she'll be limited to – she could do at least, short, simple instruction – I'd say at least one- or two-step instructions. (INAUDIBLE).

(Tr. 1019.) The limitations in the hypothetical to the vocational expert correspond to the limitations identified by Dr. Nance. When asked if such an individual would be able to perform any of plaintiff's past work, the vocational expert testified that plaintiff's past work as a meat wrapper could be performed by the person described in the hypothetical. (Tr. 1019.)

Plaintiff argues Dr. Nance agreed with a limitation identified by the state agency consulting psychologist which would, if included in the findings, establish disability. (Ct. Rec. 20 at 25.) Plaintiff apparently references Dr. Nance's testimony regarding the 1998 state consulting psychologist report. When asked if he disagreed with the PRTF, Dr. Nance said, "Yes, I, I didn't agree with that. . . . I didn't agree with it, especially in reference to the B criteria." (Tr. 1013.) Plaintiff's counsel then asked if Dr. Nance thought plaintiff had a more severe social functioning disorder and Dr. Nance said, "Right." When asked if he "agreed with the deficiencies of concentration," Dr. Nance said, "Right." (Tr. 1014.) From this, plaintiff infers that Dr. Nance agrees that plaintiff "often" has deficiencies of concentration, persistence and pace in the context of assessing limitations. Nothing in Dr. Nance's testimony suggests that he changed or otherwise contradicted his earlier, specific statement of limitations mentioned above. Presumably, Dr. Nance meant just what he said, that he agreed with the deficiencies of concentration marked as "often" in discussing the B criteria on the PRTF. As discussed *supra*, it is not appropriate to rely on the PRTF in determining a claimant's RFC. SSR 96-8p. Dr. Nance's testimony regarding the PRTF does not change his earlier, straightforward testimony identifying plaintiff's limitations when reviewed with the purpose of the forms in mind. Thus, the ALJ did not err by not including the term "often" regarding plaintiff's deficiencies of concentration.

Plaintiff also argues disability is established because the vocational expert at the previous

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -22

hearing testified that a moderate limitation in one of the MRFCA categories would preclude employment. (Ct. Rec. 29 at 16.)  At the May 2005 hearing, the vocational expert was asked to assume a moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, which is one of the boxes Dr. Gardner checked on the MRFCA form. (Tr. 651-52.)  Plaintiff correctly notes that the vocational expert indicated that an individual with such a limitation would not be able to sustain employment. (Tr. 652.)  This testimony does not, as plaintiff urges, lead directly to the conclusion that plaintiff is disabled.  An ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).   Individual medical opinions are preferred over check-box reports. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983).   At the 2005 hearing, the vocational expert was also asked to consider a hypothetical involving the limitations identified by Dr. Gardner in the narrative portion of his report: attention and concentration grossly intact; somewhat decreased in efficiency by depression; able to carry out less demanding social interactions appropriately, resulting in a decreased effectiveness at higher levels of social interaction. (Tr. 143, 650.)  The vocational expert testified that a person with those limitations could perform all of plaintiff's past relevant work. (Tr. 650.)

At the July 2008 hearing, the hypothetical posed to the vocational expert was slightly more restrictive than the hypothetical based on Dr. Gardner's narrative, taking into account Dr. Nance's opinion that plaintiff was more limited socially than Dr. Gardner found. (Tr. 1018-19.)  The vocational expert concluded a person with those limitations could perform as a meat wrapper. (Tr. 1019.)  Furthermore, the vocational expert also testified that "a person with moderate limitations in concentration, persistence and pace can potentially do unskilled, entry-level work," which is exactly the limitation identified by Dr. Nance. (Tr. 1020.)

Based on all of the foregoing, the court concludes the ALJ's decision was not based on legal error.  It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan*, 169 F.3d at 599-600.  It is not the role of the court to second-guess the ALJ.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -23

*Allen*, 749 F.2d at 579.   The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.  *Magallanes*, 881 F.2d at 750.  The fact that plaintiff or even another ALJ would have interpreted the evidence differently does not mean that the ALJ erred.  The ALJ properly considered the medical evidence, made a legally sufficient credibility determination, articulated a residual functional capacity determination based on substantial evidence, posed a hypothetical supported by the record to the vocational expert, and made a reasonable interpretation of the evidence in finding that plaintiff was not disabled before 2003.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error.

Accordingly,

**IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment **(Ct. Rec. 25)** is **GRANTED.**

2.      Plaintiff's Motion for Summary Judgment **(Ct. Rec. 19)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant.  Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED November 23, 2009.

S/ JAMES P. HUTTON
_____UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -24